## McCarrell v. Cumberland County Employees' Retirement Board

Robert W. Barton, for plaintiffs.
Bruce F. Bratton, for defendants.
Ronald M. Lucas, for additional defendant.

BAYLEY, J., May 6, 1987—Plaintiffs, retirees of Cumberland County, a fourth class county, have instituted this suit against the county, the Cumberland County Employees' Retirement Board and the county's commissioners, treasurer and controller. Defendants have joined the board's actuarial consultant, Hays/Huggins Co. Inc., as an additional defendant.

Count I of the complaint avers that defendants violated their fiduciary obligation to retirees of Cumberland County who are drawing a county pension by wrongfully allowing excess interest in the County Employees' Retirement Fund to offset contributions made by the county to the fund to maintain adequate reserves for the payment of the county's share of retirement allowances under the County Pension Law.[1] Count II of the complaint avers that the county has wrongfully failed to pay all of the fund's administrative expenses as required by section 5 of the County Pension Law, 16 P.S. §11655. Count III of the complaint avers that the county has wrongfully allowed retirement funds to be held in the name of private individuals and companies and

_____
1. Act of August 31, 1971, P.L. 398, §1, et seq., 16 P.S. §11651 et seq.

not by the county treasurer as required by the County Pension Law.

Plaintiffs seek relief in the form of an order declaring that the method of payments made by the county to the retirement fund, is unlawful. They further aver that defendants have breached a fiduciary obligation in not granting any cost-of-living increases to retirees for the years 1983 and 1985 because the county has under-appropriated the funds necessary to maintain adequate reserves in the fund. They seek an order requiring the grant of a cost-of-living increase for those years.

Defendants' complaint against their actuarial consultant, Hays/Huggins Co. Inc., as an additional defendant, avers that the retirement board acted on its advice and direction in fulfilling its lawful obligations pursuant to the County Pension Law. Defendants maintain that if they are liable to plaintiffs, then the additional defendant is liable over to or jointly liable with them. Both the defendants and the additional defendant filed preliminary objections to plaintiffs' complaint which were dismissed. The complaint was filed as a class action and following a hearing on October 1, 1986, we entered an order on October 17, 1986, supported by a written opinion, certifying plaintiffs' class as "All retirees in the Cumberland County Employees' Retirement System since 1982."[2] As a result of this certification plaintiffs also seek recovery of counsel fees and costs.

Defendants and the additional defendant have now filed motions for summary judgment pursuant to Pa.R.C.P. §1035. These motions are based upon the pleadings, answers to interrogatories, support-

---

2. See *McCarrell et al. v. Cumberland County Employees' Retirement Board et al.*, 37 Cumberland L.J. 112 (1986).

ing affidavits, depositions and admissions resulting from the filing of requests for admissions. Plaintiffs concede that a summary judgment should be entered on the claim made in count III of the complaint. Counts I and II of the complaint remain at issue and the motions are ready for disposition. A motion for summary judgment may be granted when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. A court must view the record in a light most favorable to the non-moving party and resolve all doubt against the moving party. See *Mariscotti v. Tinari,* 335 Pa. Super. 599 485 A.2d 56 (1984); *El Concilio Appeal,* 86 Pa. Commw. 219 484 A.2d 817 (1984).

This case involves an issue of statutory construction of first impression under the County Pension Law. As provided for at 1 Pa.C.S. §1921(a): "[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed if possible to give effect to all of its provisions."

## APPLICABLE LAW

Section 7(a) of the County Pension Law, 16 P.S. §11657(a), provides:

"County Employees' Retirement Fund: transfers between classes.

"(a) There is hereby created in each county of the second class A, third class, fourth class, fifth class, sixth class, seventh class, and eighth class, in which a retirement system has been established, a County Employees' Retirement Fund which shall consist of all monies arising from appropriations made by the county, from contributions made by the members of the County Employees' Retirement

System and from pickup contributions and all interest earned by the investments of monies of the fund. The monies contributed by the county shall be credited to a county annuity reserve account; and those contributed by the members and pickup contributions shall be credited to a member's annuity reserve account. Upon the granting of a retirement allowance to any contributor, whether as a superannuation retirement allowance, an involuntary retirement allowance or a total disability retirement allowance, the amount of the contributor's accumulated deductions in the members' annuity reserve account shall lose their status as accumulated contributions and shall be transferred to a retired member's reserve account. Regular interest shall be credited up to the date of retirement, death or withdrawal, to the members' annuity and county annuity and retired members' reserve accounts. Where a contributor separates from county service with vesting, regular interest shall be credited to all accumulated deductions credited to his account in the fund to the date on which he attains his superannuation retirement age. The actuary shall determine the present value of the liability on account of all county annuities payable to original members and the percentage of such liability which shall be contributed by the county each year over a period of 15 years from the time the system is established until the accumulated reserve equals the present value of said liability. All such contributions shall be credited to the county annuity reserve account. The actuary shall also determine the amount which shall be contributed by the county into the fund periodically for credit to the county annuity reserve account on account of service of all new and original members subsequent to the time the retirement system is established."

Accordingly, section 7(a) mandates that the Cumberland County Employees' Retirement Fund shall consist of:

"(1) All monies arising from appropriations made by the county,

"(2) All monies arising from contributions made by members of the retirement system,

"(3) Pickup contributions,[3] and,

"(4) All interest earned by investments of monies of the fund."

Section 7(a) further provides that the monies contributed by the county shall be credited to a *county reserve annuity account;* monies contributed by members, as well as pickup contributions, shall be credited to a *member's annuity reserve account.* Upon granting of a retirement allowance to any contributor, the amount of the contributor's accumulated deductions in that member's annuity reserve account shall be transferred to a *retired member's reserve account.*

Section 9 of the act, 16 P.S. §11659, referring to the retirement board, provides:

"Management and investment of fund.

"The members of the board shall be trustees of the fund, and shall have exclusive management of the fund with full power to invest the monies therein subject to the terms, conditions, limitations and restrictions imposed by law upon fiduciaries. Subject to like terms, conditions, limitations and restrictions, the trustees shall have power to hold, purchase, sell, assign, transfer or dispose of any of the securities and investments in the funds, as well as

---

3. These are contributions as defined in subsection 7(c), 16 P.S. §11657(c) and constitute funds a county may elect to contribute on behalf of each active member.

the proceeds of investments and of the moneys belonging to the fund.

*"The board shall annually allow regular interest on the mean amount for the preceding year to the credit of each of the accounts. The amount so allowed shall be credited to each contributor's account."* (emphasis added).

Section 2 of the act, at 16 P.S. §11652(12), defines the term "regular interest" as ". . . [i]nterest at the rate of 4 percent compounded annually, except as established by the board for member contributions." Section 6 of the act, 16 P.S. §11656, provides that the board may determine the rate of regular interest to be allowed member contribution accounts of not less than 4 percent nor more than 5.5 percent per year. Section 7(a) of the act, 16 P.S. §11657(a), provides that regular interest shall be credited up to the date of retirement, death or withdrawal to all three types of accounts — members' annuity, county's annuity and retired members' reserve account.

In pertinent part, section 6 of the act, 16 P.S. §11656, provides:

". . . [T]he actuary of the board shall (i) periodically make an actuarial investigation into the morality and service experience of the contributors to and beneficiaries of the fund, (ii) adopt for the retirement system one or more mortality tables, and (iii) *certify to the board annually the amount of appropriation to be made by the county to the fund to build up and maintain adequate reserves for the payment of the county's share of the retirement allowances."* (emphasis added).

Section 11 of the act, 16 P.S. §11661, provides:

"County guarantee; annual budgets.

"The regular interest charges payable, the creation and maintenance of the necessary reserves for

the payment of the county and members' annuities in accordance with this act, and the additional retirement benefits, are hereby made obligations of the county. The board shall prepare and submit to the county commissioners, on or before the first day of November of each year, an itemized estimate of the amounts necessary to be appropriated by the county to complete the payment of the obligations of the county during the next fiscal year."

Section 5 of the act, 16 P.S. § 11655, provides in pertinent part:

". . . [T]he expense of the administration of this act, exclusive of the payment of retirement allowances, shall be paid by the county by appropriations made on the basis of estimates submitted by the board."

## DISCUSSION

A retired employees' retirement benefit under the County Pension Law is not determined solely by the amount of the employee's contribution to the plan. Instead, each retiree's benefit is calculated as a combination of the actuarial equivalent of the employee's accumulated contributions and a county annuity determined by applying a fractional share of the employee's final annual salary multiplied by total years of service. See section 14(b), 16 P.S. § 11664(b). As a result of the Pension Law providing for "regular interest" to be credited to all three types of accounts — member's annuity, county annuity and retired members' reserve account — there have been years in which the county's investments have resulted in interest being earned in excess of regular interest as that term is defined by the law. The board's actuary, Hays/Huggins Co. Inc., has had the board maintain an excess interest account within the retirement fund to which monies earned from

investments have been credited after regular interest has been credited to the three accounts in the fund as provided for in section 7(a) of the act.

Pursuant to section 6 of the act, 16 P.S. §11656, the actuary periodically computes the present and projected liabilities of the fund and compares such liabilities to the fund's assets. The actuary considers the excess interest monies in the fund as assets of the fund. The excess of liabilities over the assets in the fund is the amount that Cumberland County appropriates to the fund each year in order to ". . . [m]aintain adequate reserves for the payment of the county's share of the retirement allowances." (16 P.S. §11656).

Plaintiffs claim that the Pension Law prohibits the trustees, as fiduciaries, from allowing the fund's excess interest to be utilized in this way. Essentially, plaintiffs maintain that the county's contribution to the fund must be calculated on the basis of comparing the fund's liabilities to assets without considering the excess interest in the fund as an asset thereof. That concept is so contrary to the clear intent of the Legislature that we can virtually dismiss it as frivolous. Section 7(a) of the Pension Law, 16 P.S. §11657(a), specifically provides that a county employee's retirement fund shall consist of, inter alia, ". . . [a]ll interest earned by the investments of monies of the fund." When interest earned on a fund's investments exceeds the definition of regular interest in the Pension Law, and after regular interest is credited to the members' annuity, county annuity and retired members' reserve accounts, such excess interest remaining in a fund is obviously an asset of the fund.

Regular interest must still be credited to the three accounts even if the income earned from investments is less than that amount. In such years the

county must pay into the fund an additional amount sufficient to maintain adequate reserves. Furthermore, the county must still pay in to the fund a sufficient amount necessary to maintain adequate reserves even in those years when interest earned from investments exceeds the regular interest credited to the three accounts. Nothing in the County Pension Law requires the segregation of any excess interest earned from that of other fund assets in determining the amount necessary to maintain adequate reserves. If the Legislature had intended such a result, it could have provided for it by simply deleting any excess interest held in the fund from being considered as a general asset thereof in arriving at the fund's actuarial soundness, and then specifically providing for its distribution.[4]

Plaintiffs have admitted that no assets of the fund have ever been transferred out of it; in other words, all monies in the fund have been utilized only for payments to retirees, for death benefits or for withdrawals by contributors. Furthermore, the record clearly shows that all administrative expenses of the retirement fund have been paid by the county out of

---

4. The law applicable to county pensions prior to the passage of the County Pension Law in 1971 and prior to an amendment in 1965, provided: "The interest earnings shall be apportioned to the members' annuity and county annuity and retired members' reserve accounts." Act of July 8, 1941, P.L. 298, §6 as amended, 16 P.S. §11566. An amendment of June 29, 1965, P.L. 148, deleted "the interest earnings shall be apportioned" and inserted "regular interest shall be credited." An identical change was made to similar sections applicable to counties of the third class (16 P.S. §11505, June 8, 1965, P.L. 111) and to counties of the fifth, sixth, seventh and eighth classes (16 P.S. §11625, June 8, 1965, P.L. 109). This change was incorporated into section 7(a) of the County Pension Law in 1971.

its general fund as required by section 5 of the act, 16 P.S. §11655.

Accordingly, we conclude as a matter of law that all interest earned on investments of the Cumberland County Retirement Fund constitutes an asset of the fund. Pursuant to section 6 of the act, 16 P.S. §11656, all such assets may be balanced against the fund's liabilities for the purpose of making the actuarial analysis necessary to certify to the retirement board annually the amount of the appropriation to be made by the county to the fund in order to build up and maintain adequate reserves for the payment of the county's share of the retirement allowances. The gravamen of count I of plaintiffs' complaint is that the board breached a fiduciary obligation in not granting cost-of-living increases to retirees for 1983 and 1985 *because* the county wrongfully shorted its contribution to the fund by allowing the excess interest therein to be calculated as an asset thereof. Therefore, it is clear that the moving parties are entitled to summary judgment because the county's contributions to the fund have not been made on the basis of such a mistake of law.[5] There are no facts which could be proven at trial which could result in a verdict for plaintiffs. They cannot prove that there was a wrongful application of excess interest which reduced the county's contribution to the fund so as to affect the discretionary denial of cost-of-living increases for 1983 and 1985. Therefore, we enter the following

## ORDER

And now, this May 6, 1987, it is ordered that:

(1) The motion of defendants and additional defendant for summary judgment on count I of plain-

---

5. Plaintiffs make no allegations of fraud or illegal conduct.

230

tiffs' complaint, is granted. Count I of plaintiffs' complaint, is dismissed.

(2) The motion of defendants and additional defendant for summary judgment on count II of plaintiffs' complaint, is granted. Count II of plaintiffs' complaint, is dismissed.

(3) The motion of defendants and additional defendant for summary judgment on count III of plaintiffs' complaint, is granted. Count III of plaintiffs' complaint, is dismissed.

Costs are placed on plaintiffs.